## Griffith's Executor *vs* Griffith.

APPEAL FROM THE DAVIESS CIRCUIT.

*Wills. Witnesses.*

WILL CASE.

*Case* 110.

CHIEF JUSTICE EWING delivered the opinion of the Court.

*June* 27.

THIS is an appeal from the Circuit Court, reversing an order of the County Court of Daviess, admitting to record a paper presented for record, as the last will and testament of Caleb Griffith, deceased, by the appellant as his executor. The will is objected to on the ground, that its signature or acknowledgment was not *attested* by the two witnesses who subscribed their names to the paper, as required by our statute to pass real estate or slaves. We concur in the conclusion to which the Circuit Court arrived, and approve the argument which led to the conclusion. We therefore adopt it as the opinion of this Court, and will not stop to repeat it, except to add, that the statute not only requires a subscription, but the *attestation* of *both* of the two witnesses required by the act.

The case stated.

It is not sufficient that they put their names to the paper as witnesses, but they must also *attest the signature or acknowledgment* of the will by the testator: *Powell on Devises*, vol. 1st, from 83 to 91 and 642, and notes and authorities cited. It is true, that if the subscription and

It is not sufficient that witnesses subscribe their names to a will as witnesses; they must also attest the signature or ac-

GRIFFITH'S EX'R.
vs
GRIFFITH.

knowledgment of the will by the testator. Subscription and attestation, though required to be by both, may be proved by one of the subscribing witnesses.

attestation has been properly made by *both*, the fact of subscription and attestation, may be proven by one of the subscribing witnesses, or by others, even against the testimony of both of the subscribing witnesses, provided the fact of *subscription and attestation by both*, shall be satisfactorily made out, as the *statute does not require* that both of the subscribing witnesses shall *prove* the subscription and attestation, but merely that both shall *subscribe* and *attest* the due execution of the will. Though the fact of *attestation* by Griffith, one of the subscribing witnesses, is satisfactorily proven by himself, neither he nor Kelly, the other subscribing witness, nor any other, proves the attestation of Kelly to the signature, acknowledgment or other act of the testator, recognizing the paper as his last will and testament. If he was awake and heard the annunciation of Wm. R. Griffith, the other subscribing witness, when Kelly entered the room, "that this was the will of Caleb Griffith, he had signed it as a witness, and he wished him to sign it," and hearing it had tacitly assented to the same, and if such tacit assent might amount to an acknowledgment, yet it is not proven by Griffith or any other witness, that Kelly was *apprized* of or *attested* such tacit assent, or that he even knew that he was in the bed, or if in the bed, that he was awake and gave his assent to the act; and Kelly expressly proves that he did not *attest* the signature or acknowledgment, nor did he know that the testator was awake, nor even that he was in the room, until some short time afterwards he saw him get up out of the bed and go to supper in an adjoining room. We think, therefore, it is clear that the fact of *attestation* by *both* of the witnesses, has not been made out, or sustained by either.

The opinion of the Circuit Judge:

"The statute of Kentucky requires, that where a will is not wholly written by the testator, that it should be signed by him, or by some other person in his presence, and by his direction; and moreover, be attested by two or more competent witnesses, subscribing their names in his presence. In the case of *Cochran's will*, (3 *Bibb*, 495,) and numerous other cases in England and America, it has been held, that an acknowledgment of the will

in presence of the requisite number of witnesses, is equivalent to signing in their presence. In the case under consideration, Wm. R. Griffith wrote the will, and it was fully executed before him, by the testator. The only question is, whether the will was executed before or in presence of Kelly, so as to constitute him an attesting witness, in contemplation of law.

"The plain and manifest construction of the statute, seems to be, that where the will is written by the testator, he should either sign or acknowledge it, in presence of two or more witnesses; and they should subscribe their names to the paper, in presence of the testator. The fact that they are to attest or witness, is, that the testator did sign or acknowledge the paper, as his last will and testament. Now, upon this point Kelly is wholly at fault. He did not see the testator sign the will; he did not see any other person sign it by the testator's directions; he did not hear the testator acknowledge the will; and moreover, when he subscribed his name to the will, was wholly ignorant that he was in the same house with the testator. He saw nothing of him, nor did he at any time hear one word from him on the subject of the paper being his will. When Kelly came into the room, W. R. Griffith told him, that the paper was the will of Caleb Griffith, and he wished him to witness it, and thereupon he put his name to the paper, solely upon the information of Wm. R. Griffith. What fact then did he attest?' Simply the statement of W. R. Griffith. As to the will, to constitute him a witness, within the meaning of the law, he should have heard statements from Caleb Griffith, equivalent to an acknowledgment by him, that the paper was his will, as he did not see the paper signed. It is contended that the statement made by W. R. Griffith to Kelly, should have the same effect, as if it had been made by Caleb Griffith himself. But at all events such effect could only be given to the statement, upon the supposition that Caleb Griffith heard it, and understood it; and it would seem to the Court, that Kelly should have known that the testator did hear and understand and assent to the statement, before it could have the same force as if made by Caleb Griffith. Kelly does not prove that

Caleb Griffith heard what was said by W. R. Griffith on the subject of the will. Nor does W. R. Griffith sufficiently establish this fact.

"When a will is attested by a witness, the witness must be in a position to be seen by the testator, and at that very moment the testator must be in possession of his faculties, and must know what is going on. He must be the party acting, as it is his act in making the will that is to be witnessed and proved by the parties present. The proof is, that before and after this will was signed, the testator was able to converse and walk about. If he was awake and sensible of what was doing concerning the will, at the time when Kelly came into the room, it is strange that he did not speak to him, or do some act to indicate to Kelly that he recognized what was doing, as binding upon him. When Caleb Griffith heard that Kelly had arrived, he told W. R. Griffith to go on with the business, this was before Kelly entered the room where the testator was, after Kelly entered, he said nothing, nor did he do any act indicating any knowledge of what was passing. So that, upon the whole case, it is the opinion of this Court, that the judgment of the County Court in admitting the paper to record as the last will and testament of Caleb Griffith, dec'd. is erroneous. It is ordered that the judgment of the County Court be reversed, and cause remanded to that Court, with directions for judgment to be entered rejecting the pretended will, and that the plaintiff in error, Greenberry Griffiith, recover against the defendant, Ridgley Griffith, his cost incurred in the County Court, as well as his cost in this behalf expended."

The judgement of the Circuit Court is affirmed, and cause remanded, that the order to the County Court may be carried into effect.

*Hardin* for appellant: *Harlan & Craddock* for appellee.