Robinson and Wood *vs. King* and others.

---

No. 74.—SAMUEL ROBINSON and HENRY WOOD, propounders of the last will of ELISHA KING, plaintiffs in error, *vs.* CALVIN KING and others, caveators.

[1.] Under the Statute of Frauds, requiring wills to be subscribed by the attesting witnesses, *in the presence* of the testator, it is not necessary that the witnesses should be in the same room or the same house with him, or that the testator should, in fact, see the witnesses subscribe their names; but it is necessary that the situation and circumstances of the testator and witnesses are such, as that the testator, in his actual position, might have seen the act of attestation.

[2.] The following clause in a will, to wit: "It is my will and desire that my

old servant, Writ, and her five children, to wit: Mat, Sherrod, Chany, Dilla and Fanny, and her husband Jacob, may be made to live comfortable, under the superintendance of my friends, Samuel Robinson and Henry Wood, into whose care and under whose protection I do hereby give and place the negroes herein named, in view of their being treated with humanity and justice, subject to the laws made and provided in such cases :" *Held,* to be on its face in conflict with the Act of 1818, against manumission, and void.

[3.] Parol testimony held to be admissible, to show that a will is illegal and void, as being in conflict with the laws of the State against manumission.

Caveat, in Washington Superior Court, March Term, 1849. Tried before Judge HOLT,

A caveat was entered to the probate and recording of the will of Elisha King, deceased, on sundry grounds, two only of which have been reviewed before this Court, viz :

1st. That the will was not properly attested by the witnesses to the same ; and

2d. That the following clause is void under the Statutes of Georgia, prohibiting the manumission of slaves—" It is my will and desire, that my old servant, Writ, and her five children, viz : Mat, Sherrod, Chany, Dilla and Fanny, and her husband, Jacob, may be made to live comfortable under the superintendance of my friends, Samuel Robinson and Henry Wood, into whose care and under whose protection I do hereby give and place the negroes herein named, in view of their being treated with humanity and justice, subject to the laws made and provided in such cases."

Upon the trial on appeal from the Court of Ordinary, it was in evidence that, at the time of the attestation of the will, the testator was lying in bed and signed the will, which was then taken into the piazza, some ten feet distant from the testator, to a table, and there subscribed by all the witnesses ; but the situation of the table was such, that the testator could not see the witnesses attest the will. They were out of the room not more than three or four minutes. The testator was not able to rise from bed without assistance.

Parol testimony was offered to · prove, by the admissions of Samuel Robinson and Henry Wood, the executors and legatees, that the object and intention of the testator in bequeathing the slaves to them, was to avoid the manumission laws of Georgia, and virtually to set them free.

Robinson and Wood *vs.* King and others.

Counsel for propounders objected to the testimony. The objection was overruled, and propounders excepted.

It was testified by Joseph Bangs, that "Robinson, after the death of King, asked the advice of witness what to do; that King, by his will, intended to free his negroes, and said he was afraid the community would think hard of him; that he had written a will to free the negroes, and had told testator he could free them; that he, Robinson, did not know then that it was against the law." Dr. J. S. Smith testified, that "Robinson told him, that old man King wanted to free his negroes, and asked witness' opinion of a draft of a will he showed him." One of the subscribing witnesses testified, that at the request of testator, he "read over to him the law on the subject of emancipating slaves, before the will was signed. After he read the law, testator turned over and said, 'well, they must go back again.' When witness got there in the morning, Henry Wood was there, and stated to witness, that Elisha King wanted to write his will and free his negroes."

The Court charged the Jury, that from the face of the instrument itself, it was the opinion of the Court, that the testator intended to give an estate in the negroes different from what the law admitted, and that the Jury were at liberty to ascertain that intention, either from the instrument itself, or from testimony, or from both together.

To all which charge counsel for the propounders excepted.

Counsel for propounders, among other things, requested the Court to charge, "That an actual presence of the testator when the will is subscribed by the witnesses, is not required by law; but that there is a constructive presence, and that the testimony in this case makes such a case of constructive presence as to satisfy the provisions of 29 *Charles II.*"

The Court refused so to charge, and counsel for propounders excepted.

JOHNSTON & THOMAS and I. L. HARRIS, for plaintiffs in error.

Points made by R. M. JOHNSTON—

1st. Parol testimony is inadmissible to explain the intention in the will of a testator. 1 *Jar. on Wills*, 350. *Cheney's Case*, 5 *Rep.* 68. 1 *Wend. Rep.* 549. 1 *J. C. R.* 234.

2d. It is admissible only, 1st, to remove a latent ambiguity, and

2d, to rebut a resulting trust. It is admissible in the first, because the ambiguity itself is created by parol testimony. 1 *Johns. C. R.* 234. 1 *Ves. Jr.* 259. 7 *T. R.* 148. 1 *Wend.* 549. 14 *John. Rep.*

3d. Where the will admits of two constructions, that is to be preferred which will tend to make it good. 2 *Jar.* 743. *Bac. Abr. title* Will, 539. 3 *Bur.* 1634. *Petersdorff, Abr. title Devise,* 143. 4 *Ves.* 311. 3 *P. Wms.* 260.

4th. When the will admits of two constructions, one consistent with, the other against law, the first shall be taken.

5th. A testator is rather to be presumed to calculate on the dispositions of his will taking effect than the contrary. 2 *Jar.* 745, *and authorities there referred to.*

6th. Effect is to be given to every will if a meaning can be found. 19 *Ves.* 664.

7th. Words of recommendation in a will are sufficient to make a bequest valid. 19 *Ves.* 664. 14 *J. R.* 1.

8th. The words of this will are not within the provisions of the Statute of 1818, forbidding the manumission of slaves. *Prince's Digest,* 975.

C. J. JENKINS and E. H. BAXTER, for defendants in error.

Points made by C. J. JENKINS—

1st. The 3d clause of the paper propounded being caviated, on the ground that the object intended to be accomplished by it is *illegal,* parol evidence is admissible. Declarations of testator. Declarations of one of two joint legatees. *A fortiori* where a conspiracy in fraud of the law is charged. 2 *Roberts on Wills,* 39, 40. 1 *Egg. Eccl. Reps.* 452, '3. 1 *Greenlf. on Ev.* 334, '5, §§284, 287. 1 *Greenlf. on Ev.* 210, §§171, 172, 174. 2 *Ib.* 576, §190. *Atkins vs. Suryer, et al.* 1 *Pick.* 192. 13 *Ser. & Rawle,* 323, 328. *Prince,* 787, 794, *or Hotchkiss,* 806, 807.

2d. The terms of that clause do not imply a gift of the absolute property in the slaves to Robinson and Wood, but create a trust, in contravention of the Act of 1818, inhibitory of manumission, direct or virtual. *Ward on Legacies,* 1, 3. 1 *Roper on Legacies,* 1. 2 *Blackstone's Com.* 441. *Lewin on Trustees,* 15. 2 *Story's Pg.* 275, §964. 2 *Roper on Legacies,* 297. *Vance et al. vs. Crawford et al.* 4 *Ga. Reps.* 445.

3d. There is no ground for the distinction of actual and construc-tive presence of testator whilst witnesses are subscribing a will of lands. The real question is, whether or not, in the relative positions of the testator and the witnesses, at the moment, the for-mer could see the latter subscribe. In this case the concurrent testimony of the subscribing witnesses is that he could not. 2 *Greenf. on Ev.* 564, §678. *Eddon vs. Hurdey,* 7 *Har. & John.* 61. *Russel vs. Falls,* 3 *Har. & McHen.* 457. *Brodwick vs. Brodwick,* 1 *Peere Wms.* 239. 1 *Maule and Selwin,* 294. *Neel vs. Neel,* 1 *Leigh,* 6.

IVERSON L. HARRIS, for plaintiffs in error.

Presence may be constructive as well as actual. Nor is actual presence, (if the Court should hold that the Statute required that,) limited in signification in philological works to being face to face, or in view.

The clause of the will making devise to plaintiffs in error, con veys a gift, and vests absolute property in them, and is not a mere trust or confidence. The words, "into whose care and under whose protection I do hereby give and place the negroes herein named," and the words, *I do hereby give unto them the aforesaid negroes, and do hereby deliver to them possession thereof,* convey precisely the same ideas, impose the same duties, and differ in no respect, except that the testator has expressed what necessarily follows and is implied under the last form of devise. No one will deny that the last is a good devise. It is difficult to perceive how the first can be denied to be efficacious, if they only differ as is stated.

The testator places the negroes under the "superintendance" of the plaintiffs, and thereby subjects them to the control, power, discretion and dominion of the plaintiffs. The words, "I do hereby give," construed in connection with *superintendance,* makes it an absolute devise of them as property; and the trust and con-fidence indicated by the words, that the negroes "may be made to live comfortable," and "in view of their being treated with hu-manity and justice," "subject to the laws made and provided in such cases," if violated, can be enforced only by the penal laws of the State compelling, to a certain extent, these moral duties to be performed.

There is no trust, express or implied in the clause examined, in reference to the *title*. No one, under the Statute of 1818, (*Prince's Digest*, 795,) will contend that it is an express trust for the purpose of effecting, or endeavoring to effect, the manumission of the slaves.

Nor can it be an attempt to manumit *indirectly*, for by the terms of the will, there must be either the allowing and securing, or attempting to allow and secure to the slave, *the right or privilege of working for himself;* or of allowing and securing to the slave the *profits* of his labor or skill.

Unless, then, the one or the other of these was designed by the testator, and that design collected from the instrument alone, there can be no implied trust; therefore no violation of the Act of 1818, or attempt to violate it.

The Court erred in allowing evidence of the sayings of Robinson, the executor, with a view to ascertain the intention of the testator, and the motive which influenced him, there being no latent ambiguity in the will. 3 *Cowen's edition Phil. Ev. note,* 960, *p.* 1425. *Ib. note* 961, *p.* 1428. *Ib. note* 986, *p.* 1478.

. To allow such testimony is virtually to allow a repeal of the 22d section of the Statute of Frauds, and to substitute therefor the testimony of one witness in lieu of three. It moreover substitutes the uncertain memory of one witness, in lieu of the fixed meaning and the precise and very language of the testator himself. *See* 1 *Phillips' Ev.* 548.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The Statute of Frauds requires the attestation of a will of real estate to be "in the presence" of the testator. The first question in this case is, whether the will of Elisha King was subscribed in his presence. The testator signed the will in bed, and was not able to get up without assistance. The witnesses wrote their names to the will in a piazza adjoining the room where the testator lay, and were some ten feet distant from him. The room in which the testator was, communicated with the piazza by a door, but the situation of the testator and of the witnesses was such that the testator could not see the witnesses attest the will. This, we hold, was not an attestation "in the presence of the testator."

. This requirement of the Statute is to prevent a fraud upon the testator, by substituting another will.   The law requires the attestation to be in his presence, that he may have ocular evidence of the identity of the instrument attested as his will.   The construction of this clause of the Statute of Frauds is well settled. It is not necessary that the testator shall actually see the witnesses subscribe.   If this was required a blind man could not make a devise.   The simple turning of the head, or closing of the eyes at the moment of attestation, although done at the side of the testator, would, if that strictness was required, defeat his will.   Nor is it necessary that the testator and the witnesses shall be in the same room, or even the same house.   And, on the other hand, if they are in the same apartment, and the testator's view of the proceedings is necessarily obstructed, the attestation is insufficient.   The rule is, *if the situation and circumstances of the testa-tor and witnesses are such, as that the testator, in his actual position, might have seen the act of attestation, it is a good attestation.*   I consider that this is a firmly settled rule of law, and shall not review the authorities to prove it, but content myself with a full reference to them.   At the same time I admit that peculiar cases might occur, where modification of this rule might be admissible. I state it as the general rule, applicable to all ordinary cases and as controling this case.   *Shires vs. Glasscock*, 2 *Salk.* 688.   1 *Ld. Raymond*, 507, *S. C.   Winchelsea vs. Wauchope*, 3 *Russ.* 441, 444.   *Todd vs. Earl of Winchelsea*, 2 *C. & P.* 488, *S. C.   Davy vs. Smith*, 3 *Salk.* 395.   *Russell vs. Falls*, 3 *Har. & McHen.* 463, 464.   *Doe vs. Manifold*, 1 *M. & S.* 294.   *Casson vs. Dade*, 1 *Bro. Ch. Cas.* 99.   *Dewey vs. Dewey*, 1 *Metc.* 349.   1 *Show.* 89.   *Carth.* 79, *S. C.   Edelen vs. Hardy*, 7 *Har. & J.* 61.   *Neil vs. Neil*, 1 *Leigh*, 6.   1 *P. Will.* 740.   1 *M. & S.* 294.   *Newton vs. Clarke*, 2 *Curtis*, 320.   7 *Eng. Eccl. R.* 125.   *Ib.* 150.   2 *Greenl. Ev.* §678. *Powell on Devises*, (*Jarm. Edit.*) 80 *to* 112.

If the situation of the parties is such that the testator may see the attestation by rising from his bed, it is not a good attestation. He must be able to see it in *his actual position.*   In this case the testator was in bed and unable to rise without assistance, and by the testimony, the situation and circumstances of the testator and witnesses were such as that, in his actual position, he could not see the attestation.   It is a plain case, and the decision of the Circuit Judge was right.

[2.] The Circuit Judge held that the following clause in the will of Mr. King is illegal and void upon its face, it being in conflict with the Act of 1818, against the manumission of slaves, because the intention of the testator was to give an estate in the negroes mentioned, different from what that Act admits, to wit : " It is my will and desire that my old servant, Writ, and her five children, to wit : Mat, Sherrod, Cherry, Dilla and Fanny, and her husband, Jacob, may be made to live comfortable under the superintendance of my friends, Samuel Robinson and Henry Wood, into whose care, and under whose protection, I do hereby give and place the negroes herein named, in view of their being treated with humanity and justice, subject to the laws made and provided in such cases."

It is our judgment that this clause is void, because it is in conflict with the Act of 1818. We arrive at this conclusion irrespective of the parol testimony which was admitted on the trial, and upon a construction of the clause itself.

By the Act of 1801, it is made unlawful for any person to manumit any slave, or any person of color who may be deemed a slave at the time of passing the Act, in any other manner or form than by an application to the Legislature for that purpose. *Prince,* 787. Penalties are prescribed in this Act for its · enforcement. It is amended by the Act of 1818, which re-enacts the provision above referred to, with additional penalties. By the 4th section of the Act of 1818, it is declared that, " all and every will and testament, deed, whether by way of trust or otherwise, contract, agreement or stipulation, or other instrument in writing, or by parol, made and executed for the purpose of effecting, or endeavoring to effect, the manumission of any slave or slaves, either directly by conferring or attempting to confer freedom on such slave or slaves, indirectly or virtually, by allowing and securing, or attempting to allow and secure to such slave or slaves, the right or privilege of working for his, her or themselves, free from the control of the master or owner of such slave or slaves, or of enjoying the profits of his, her or their labor or skill, *shall be and the same are hereby declared to be utterly null and void.*" This section makes all persons executing such will, deed, &c. or parol stipulation, and also, all persons who may be concerned in giving effect to them, by accepting a trust or otherwise, liable to a heavy penalty. *Prince,* 794, '5, '6.

In *Spaulding vs. Grigg*, (4 *Ga. Rep.* 75,) we have given generally our views as to the intention and policy of this Act. It may be sufficient now to say, that the Acts of the Legislature against manumission, look to the prohibition of all manumission, and of all attempts to effect it, directly or indirectly. The policy of the State is to prevent it absolutely. The intention of the Legislature farther was to prohibit qualified manumission—to prohibit owners of slaves from placing them in a situation where, according to law, they would be pronounced slaves, yet where they would be entitled to some of the rights and immunities of freemen. In the position, for example, where they might have the control of their own time, and enjoy the fruits of their own skill and labor. To effectuate this policy, all wills and deeds, contracts or verbal stipulations, having for their object the manumission of a slave, or an attempt to manumit a slave, directly or by the creation of a trust, *are declared null and void.* If, therefore, it is apparent upon the face of this will, that it was the intention of the testator, directly or by creating an agency or trust, either to manumit these slaves, or to attempt to manumit them, or to place them or attempt to place them in a situation where they might be enabled to work for themselves, free from the control of a master, or where they might enjoy the profits of their skill or labor, it is illegal, and by Statute void. Our construction of this will is, that the testator did not intend to give these negroes to Messrs. Robinson and Wood, but to make them agents or trustees, to hold them in order that they might enjoy the privileges of manumission. He, in other words, intended to declare a trust, which was practically freedom in their hands. Whether, aside from the Acts against manumission, he was successful in declaring the trust in such way as would make it capable of execution, is an immaterial question. Under the Act of 1818, it is enough, if he has attempted to create this trust, to make it null and void. Perhaps the best definition of a will or testament is this—" The legal declaration of a man's intentions which he wills to be performed after his death." What then is the intention declared in this instance? It is not to *give* these negroes to Robinson and Wood as a legacy. A legacy is the transfer, by gift in the will, of the entire property in the chattel—the whole interest, the entire dominion passes. Here there are no words used which import an intention to part with the property in the slaves, and to clothe

these persons with the title. If the testator had simply said, *I give* Writ and her children to my friends Robinson and Wood, without anything farther, the intention to pass the fee would have been sufficiently declared. But not so; for he does not say that he gives the slaves to them. The word *give* in the clause is so qualified, as we shall see, as to convey no title. No words of perpetuity, or of inheritance, or of transfer are used. Indeed, it is very obvious that the testator, with care, avoids an absolute gift. Much stress was laid in the argument on the words, *I do hereby give ;* but the connection in which they stand, clearly evinces that they were intended to mean no more than a tradition of the negroes *into their care and under their protection.* After declaring that it is his will and desire that the negroes should be made to live comfortable under the superintendance of Robinson and Wood, he proceeds to say, "into whose care and under whose protection I do hereby give and place the negroes herein named." He means then, not to *give* the negroes *to them,* but give them into their care. To *place* them in their hands to create an agency for their protection. The words declare no such intention as that these slaves shall be theirs—liable to their debts and subject to their alienation. The limitation of the bequest is for *the care and protection* of the negroes. The word *give* if it is significant of a gift, means a gift in trust ; that they will *superintend* them, take *care of* and *protect* them. That such is the will of Mr. King, is obvious from the whole drift of the clause. Robinson and Wood are not the objects of his bounty, but the negroes are. They are the subjects of his solicitude. Their *comfort* in life is the object which stands prominently forth in every word of the will. The object is declared—he expresses that to be his will and desire—and they are placed under the *superintendance* of these convenient co-workers, " in view of their being treated with humanity and justice." Now, either the property in these negroes is in them or it is not. That it is not is clear. If not, what would be their condition in their hands at the death of the testator ? That of quasi servitude and of practical freedom. Precisely that condition into which the Legislature has declared they cannot be placed. If I am right in this construction, then the last words of this clause, "subject to the laws made and provided in such cases," mean nothing. Suppose a testator should manumit his slaves out and out, and yet add, *subject, nevertheless, to the laws*

*in such cases made and provided,* would it be held that this last clause would make the will a good one ?   I trow not.

The *intention* is clearly, to my mind, *declared* in this will, and the insuperable difficulty is, that the declaration of intention is *not legal.* Upon the construction of the paper, then, we agree with Judge *Holt,* that this will, as to the bequest to Robinson and Wood, is void.*

·[3.] The Circuit Judge admitted parol testimony to show the intention of the testator in the item of the will in relation to the slaves, and that is the only remaining question which was argued before this Court.

The Statute, as I have shown, makes void all kind of instruments in writing manumitting or attempting to manumit slaves; and also, all parol agreements or stipulations having the same objects, ·and expressly forbids all trusts for the like ends, no matter how created.   A will, then, which seeks to accomplish on its face, any of these objects, is void because illegal.   So, also, if unexceptionable on its face, it is void if there is a secret parol agreement, by creating a trust or otherwise, to accomplish the same ends.   According to the spirit and policy of the laws of Georgia, and more particularly of the Act of 1818, we think it competent to show by parol, that a will is void, because against the law.   No man can make a will against the law.   That would be to make all men law-makers by their last wills and testaments.   A paper purporting to be a will, which is in conflict with the laws, is no will. It is competent, by parol, to show that a will is illegal.   Not to give a construction to the words of the will, not to show what the testator meant in the provisions of a will, but to show that it is void—no will, because against the law.   I believe there is no doubt but that the proposition stated is true upon general principles.   The policy of the Manumission Laws of Georgia, imperiously requires such a rule, if it were not so true.   Without it, the whole effect of the laws might be, would be defeated.   Secret parol trusts would abrogate the laws.   They (the laws) have declared, that all trusts, by parol or otherwise, are void—this being so, the testimony is, by the Act itself, made admissible to prove them void.   A law which makes a secret parol trust illegal, *ex vi termini,* authorises its proof.   It has never been questioned

---

*See *Vance et al. vs. Crawford et al.* 4 *Ga. Reps.* 445.

that parol testimony is admissible to show usury in a written contract; or that a contract is founded on a gaming consideration; or for the compromise of a felony; or on any account illegal. Why should not the principle apply to wills as well as to deeds or other contracts? Wills are void by our laws, which in any form seek to manumit a slave—they are illegal and their illegality may be shown. Fraud vitiates all contracts, all transactions—frauds upon the law as well as frauds upon the parties. Where there is a devise or conveyance to trustees, upon a secret understanding that the property is to be applied to purposes which the law forbids or will not allow to take effect, that is a fraud upon the Legislature, as well as upon the parties who would become entitled upon the failure of the illegal gift, and parol evidence is admissible to prove the transaction. This is the general rule. *Hill on Trustees,* 164. *Mucklestern vs. Brown,* 6 *Vesey,* 52, 67. *Strickland vs. Aldridge,* 9 *Vesey,* 516. 2 *V. & B.* 259. *Podmon vs. Gunning,* 7 *Sim.* 644. *Edwards vs. Pike,* 1 *Ed.* 267. 2 *Atk.* 156. *Pring vs. Pring,* 2 *Vern.* 99. 2 *Crabb's Law of Real Property,* 550, 551. *R. vs. Lady Partington,* 1 *Salk.* 162. *Attorney General vs. Duplessis, Parker,* 144, 160. *Addington vs. Carne, Barnard,* 130.

Let the judgment of the Court below be affirmed.