CASE 37—PETITION EQUITY—FEBRUARY 17.

# Soward, &c., vs. Soward, &c.

APPEAL FROM FLEMING CIRCUIT COURT.

1. A paper purporting to be a will was written on the first, and a little over half, of the second page of a sheet of cap paper. The sheet was then folded in the form of a letter, so as to inclose the half which contained the writing within the other half. It was sealed with wax, and was afterwards presented by the person who had subscribed it, to three persons to be by them witnessed as his will ; they, at his request, wrote their names on the outside as witnesses, neither of them seeing or knowing the contents. Their names were on the fourth page, or outside of the sheet. *Held*—That this was not a sufficient attestation under the statute. (2 *Rev. Stat., sec.* 5, *p.* 458.)

2. A will, to be valid under this section, must be in writing, with the name of the testator written at the foot or end thereof. The names of the attesting witnesses must, in like manner, be written at the foot or end of the instrument.

3. One of the objects of these provisions is to insure the identity of the instrument. Another object is to prevent fradulent additions to, or alterations of, the instrument.

4. Where there is an unnecessary and unreasonable blank space between the conclusion of the will and the signature of the testator, or the names of the witnesses, such will is not sufficiently executed or attested. (1 *Williams on Executors*, *p.* 67.) As to what would constitute such unreasonable blank space, no general rule can be laid down.

H. TAYLOR, for appellants, cited *English Stat. Wills*, 1 *Vict.*, *chap.* 26 ; 1 *Jarm.*, 139, 116; 2 *Curtis*, 547, 607, 756 ; 2 *Harrison*, 86; 2 *Halst.*, 70 ; 2 *Green. Chy.*, 625.

STANTON & THROOP, for appellees, cited *sec.* 26, *chap.* 21, 2 *Bouv. Inst.*, 394 ; 1 *B. M.*, 117 ; 16 *B. M.*, 113; 24 *Eng. Law and Eq. Rep.*, 608 ; *Ibid.*, 31, *p.* 626 ; 2 *Rev. Stat.*, *chap.* 106; 4 *Dana*, 1 ; 3 *J. J. M.*, 116 ; 6 *J. J. M.*, 444 ; 4 *Dana*, 221 ; 4 *Kent, secs.* 74, 75 ; 3 *Marsh.*, 144 ; 3 *Bibb*, 491 ; 16 *B. M.*, 112 ; *Williams on Ex'ors*, 79, 112 ; 17 *B. M.*, 389 ; 2 *Met.*, 449, 450.

ANDREWS & COX, on same side, cited 2 *Stat. Law*, 1837 ; 3 *Marsh.*, 146 ; 1 *B. M.*, 57, 114; 16 *B. M.*, 113.

SIMPSON & SCOTT, on same side, cited 6 *Bing.*, 310 ; 3 *M. & P.*, 689 ; 5 *Ib.*, 316 ; 3 *Bibb*, 495 ; 6 *J. J. M.*, 444 ; 3 *Marsh.*, 146 ; 2 *Marsh.*, 46 ; *Litt. Sel. Cas.*, 503 ; 16 *B. M.*, 113 ; 1 *B. M.*, 117 ; 6 *Gratt.*, 63 ; 2 *Met.*, 449 ; 2 *Eng. Eq.*, 591 ; 1 *Esp.*, 391 ; 2 *Ves. Sen.*, 454 ; 18 *Ves. Jun.*, 183 ; 1 *Sanders*, 279.

CHIEF JUSTICE DUVALL DELIVERED THE OPINION OF THE COURT:

On the 21st October, 1860, Richard Soward procured one Farrar to draw up a writing to which Soward subscribed his name as his last will. The instrument thus subscribed was written on a sheet of ordinary cap paper, and occupied the first and a little over half of the second page of the sheet, leaving blank the remainder of the sheet. The entire sheet was then folded up by Soward in the form of a letter, so as to inclose the half which contained the writing within the other half, and it was then sealed with wax in the presence of the draftsman. The paper, thus folded and sealed, was afterwards presented by Soward to three persons to be by them witnessed as his will. Those three persons, at his request, wrote their names upon the outside of the sealed paper as witnesses, neither of them, however, seeing or knowing the contents, or being informed concerning the same beyond what Soward

himself declared at the time they were requested to attest it.
Their names were written on the fourth, or outside page of the
sheet, and there were no words accompanying their names to
indicate the purpose for which they were written.  Soward
having died, this paper was admitted to probate as his last will,
notwithstanding the opposition of his heirs at law ; and upon
an appeal to the circuit court, the order of the county court
was affirmed.  From that decision the heirs at law have ap-
pealed.

No question arises as to the mental capacity of the deceased
to dispose of his estate by will.  Nor does the evidence leave
any room to doubt that the paper subscribed by the deceased,
as his will, is the same paper on which the three names were
subsequently written.  So that the only question for us to
determine, is, whether the attempted attestation of the paper
was effectal under the statute to give it validity as a will.

The *fifth section* of the chapter on wills (2 *Rev. Stat.*, *p.* 458)
is as follows : "No will shall be valid unless it is in writing,
with the name of the testator *subscribed* thereto, by himself or
by some other person in his presence, and by his direction ; and
moreover, if not wholly written by the testator, the subscrip-
tion shall be made, or the will acknowledged by him, in the
presence of at least two credible witnesses, *who shall subscribe
the will with their names* in the presence of the testator."

This section embodies the substance of the first section of
the statute of wills enacted in 1797, the latter statute being a
substantial transcript of that of Charles II.  There is this
material difference, however, between these statutes :  That of
1797, as well as the English statute, required that " such last
will and testament be *signed* by the testator or testatrix,"
&c.  And in the case of *Sarah Miles' Will* (4 *Dana,* 1), it
was held that " as the Kentucky statute of wills is a sub-
stantial transcript of that of Charles II, the British adjudica-
tions on the statute of England, prior to its re-enactment here,
should be deemed evidence of the effect which our Legislature
intended that it should have when adopted ; and it seems to
have been the well settled *judicial* doctrine of England, that
the writing of the testator's name, by himself, in the body of the

will or elsewhere on the same paper, with the design of giving it authenticity, may be such a *signing* as the statute contemplated, and that the *subscription* of his name at the bottom is not necessary if it appear that when the will was attested and published there was no intention thus to subscribe the name." It was therefore determined that the name of the testator, although not written by himself nor *subscribed* to the will, might, if written by another person in any part of the will, and acknowledged in the presence of two subscribing witnesses, be sufficient for devising land.

To remedy the evils resulting from this latitudinous interpretation of the statute, the English statute of 1838 was passed, introducing an important modification of the former law as expounded by the courts. It provides that no will shall be valid unless " it shall be *signed* at the foot or end thereof by the testator, or by some other person in his presence, and by his direction." Our Legislature, prompted no doubt by the same motives of policy, adopted the same provision in the fifth section of the Revised Statutes above quoted. There is a difference in the verbiage, but none whatever in the meaning, substance, and effect of the two enactments. Our statute, instead of the phrase, " it shall be signed at the foot or end thereof," uses the equivalent words, " with the name of the testator *subscribed* thereto." There is no difference between the classical, literal, and popular meaning of the word *subscribe* when used with reference either to the execution or attestation of written instruments. To subscribe a writing, either as obligor or as attesting witness, is to sign the writing beneath or at the end or foot thereof. This is the sense in which the word is used in statutes and by all legal writers, and it is the sense in which it is popularly understood.

It is contended, however, on the part of the appellee that the words *subscribe* and *sign* are generally used interchangeably, and mean the same thing. Can it be supposed that if the statutes of Charles II and of 1797 had required a will to be *subscribed* instead of *signed* by the testator, the writing of the testator's name in the body of the will would have been held to be a substantial compliance with those statutes? Or can it be

supposed that the framers of the Revised Statutes and the Legislature, by substituting the words " with the name of the testator subscribed thereto," in the fifth section *supra*, for the words " so as such last will and testament be *signed* by the testator," intended to introduce no change in the mode of executing wills ?   Can it be doubted that by adopting such change of phraseology the Legislature intended to follow the salutary legislation of England on the same subject, and thereby to remedy the mischief arising from the judicial construction which the former statute had received ?   We think not.

It is furthermore argued that an additional statute was necessary to effect the desired change in the statute of wills ; and that such additional statute is found in the 26*th section* of the chapter on *construction of statutes*, which declares, that " when the law requires any writing to be *signed by a party thereto*, it shall not be deemed to be *signed* unless the signature be *subscribed* at the end or close of such writing."   This section, it is said, was intended to apply and give effect to the fifth section of the chapter on wills, because there was no other instrument but a will that had been decided to be valid when not signed by the party at the end thereof; and, furthermore, that as a subscribing witness is not, strictly speaking, a *party* to the instrument, the section does not apply to the witness.   Hence it is argued, that, in this section, the words *signed* and *subscribed* are used as synonymous; and that whilst the testator, being a party to the instrument, is, by this section, required to *subscribe* his signature at the end or close thereof, the subscribing witnesses are required only to *sign* their names —not at the end or close of the instrument—but, under the decisions referred to, by writing their names at the top or bottom of the will, or anywhere in the body of it; for such was held to be a valid *signing* by the testator under the former law.

It would seem that the mere statement of this argument was a sufficient answer to it.   It is doubtful, in the first place, whether this section was intended to apply to the fifth section of the chapter on wills.   It certainly does not in terms, for that section requires the testator to *subscribe* the will, not to

*sign* it, as the former statute did; and, in the second place, it does apply to the contracts which, by the statute of frauds, are required to be *signed* by the party thereto; and those contracts had been held sufficiently *signed* where the name of the party appeared in the body of the instrument, though not at the end or close of it. The same effect had been given to the word *sign* as used in this statute that had been given to the same word in the statute of wills. (*Miles' will, supra.*) But can it be supposed that the Legislature intended to use the same word twice in the same section with two totally distinct significations; that the word *subscribe*, as applied to the testator, was intended to mean one thing, and the same word, as applied to the witnesses, to mean a different thing, and should have left these different meanings to be ascertained by a doubtful interpretation of a general rule for the construction of a different word? The language of the rule is tautological.

It would have been sufficient, strictly speaking, to say that the writing should not be deemed to be signed unless the signature be subscribed. The additional words were perhaps used inadvertently, or, more probably, with a view to express with greater emphasis and certainty the idea intended to be conveyed, which was the designation of the place to be occupied by the signature.

It results from what has been said, that a will, to be valid under the fifth section of the present statute of wills, must be in writing, with the name of the testator *subscribed* thereto, or, in other words, with the name of the testator written at the foot or end thereof. Such, in our judgment, is the clear meaning of the word *subscribe*, as here used; and such was the effect intended to be given it by the makers of the law.

The same section further provides that if the will be not wholly written by the testator, "the subscription shall be made, or the will acknowledged by him in the presence of at least two credible witnesses, who shall *subscribe the will with their names*, in the presence of the testator." It remains to consider, briefly, the meaning and effect of the word *subscribe*, as used in this connection.

After having shown what the statute requires to be done by

the testator in order to complete his testamentary act of *sub-scribing* the will, it would seem that there could be no room for doubt as to the nature of the act required to be done by the witnesses. "They shall *subscribe* the will with their names" is the imperative and explicit mandate of the law. They are to perform this act by writing their names beneath or at the foot or close of the will. No other mode is pre-scribed, nor is there a case to be found in which a different mode was ever recognized as sufficient. True, it has been repeatedly held that the name of the witness may, at his request, or by his authority, be written by another, and that this will be a sufficient compliance with the statute, because the act of subscribing is properly treated as the act of the witness. It is furthermore true, as was said in the case of *Upchurch vs. Upchurch* (16 *B. Mon.*, 112), that " in every adju-dication of this court, involving the publication and attesta-tion of wills, from Cochran's will case (*supra*) down, a substantial, rather than a literal compliance with the statute, has been demanded ; and if its object and intent were reached *without a violation of its express language*, that is all that has been required."

This is a just and equitable rule of construction, and should be carefully adhered to. But, at the same time, it cannot be allowed an application so extended and unlimited as to work a practical repeal of the statute. And such, in our opinion, would be the effect of its application to the present case. For we are satisfied that there has not been a compliance, sub-stantial or literal, with the statute, but, on the contrary, a palpable disregard of its express language in the attempted attestation of the paper in question. The witnesses did not "subscribe the will with their names," in any rational or allowable acceptation of the language. Their names were not written beneath, or at the foot or close of the paper, or any where near the place so designated. Between the paper, as subscribed by Soward, and the names of the witnesses, there is an intervening space of nearly two blank pages. So far from *subscribing* their names to the will, it may be said, with much more propriety and accuracy of speech, that they merely

indorsed the paper enveloping and inclosing the will, without any accompanying writing or memorandum to indicate the purpose of the indorsement, or showing any connection whatever between the indorsement and the will. If the paper had been inclosed in a sealed envelope, and the witnesses had written their names on the envelope, it would have been quite as near an approximation to the requirements of the statute. There would also have been just as little room to doubt the identity of the paper in the one case as in the other. And whilst it is true that one of the chief objects of requiring the subscription of the names of the witnesses is to insure identity, it is equally true, that another object is to prevent fraudulent additions to, or alterations of, the instrument to be subscribed. But the mode in which these objects are to be attained is definitely and certainly prescribed by the law, and it admits the substitution of no other mode. In some of the States three subscribing witnesses to a will are required; in others, a devise of lands is valid without any subscribing witness, provided its authenticity can be proved by two witnesses. Here, two witnesses are required. But, if identity be the sole object, and if any of the positive and plain requirements of the law are to be disregarded in cases where the identity of the paper, and the fact that it was executed as a will, are established, as in this case, why refuse to admit a will to probate merely on the ground that but one witness had subscribed it? The statute does not more imperatively require two witnesses, than it requires them to subscribe their names to the will; and there would be as much propriety in dispensing with the one as the other, for the purpose of mitigating the hardship of particular cases, resulting generally from the ignorance or carelessness of the testator. Thus, step by step, under the pressure of *hard cases*, all the forms of the law which were adopted as the surest means of protection against imposition and fraud might, and would, soon become so modified by judicial construction as to lose all their efficacy. "Care ought to be taken," said Chief Justice Tindal, "in interpreting the statute of frauds, that its efficacy shall not be destroyed by admitting one exception after another, each being weaker than that by which it was preceded." (42 *Com. L. Rep.*, 388.)

We have been referred to no case and have found none, arising under the old English or Kentucky statutes of wills, involving a question similar to the one before us. The case most nearly resembling it is referred to by Williams in his work on executors. (1 *vol., p.* 67.). It appears that the body of the will was written on and occupied the entire first side of a sheet of paper. The second side was left in blank. On the third side was a full attestation clause, and at the foot or end thereof were the signature of the testator and the subscription of two witnesses. It was held to be a valid will under the statute, because the whole of the deceased's property was given to the wife, who was named sole executrix, and consequently there was no reason to apprehend that the deceased intended to make any further bequest. But, in later cases, the same learned judge, with the concurrence of the Judicial Committee of the Privy Council, felt it necessary to take a more rigid view of the statute, on the ground that it was intended to prevent any addition being made to the will after its execution. "And it seems to be now established, that, notwithstanding the will contains a complete disposition of the property, and an appointment of an executor, yet, if there is an unnecessary and unreasonable blank space left between the conclusion of the will and the signature of the testator, the will is ill executed, even though it be manifest that he had no intention to evade the law, or to do anything more to the will after execution, but, on the contrary, was anxious to comply with the requisites of the statute."

As to what would constitute such unnecessary and unreasonable blank space between the conclusion of the will and the subscription by the testator or witness, no general rule can be laid down. Each case must depend on its own peculiar facts and circumstances. All that is intended to be decided in this case is, that the witnesses did not subscribe their names to the paper in question according to the positive requirements of the law, and that, consequently, the paper ought not to have been admitted to probate as the will of the deceased.

The judgment of the circuit court is therefore reversed, and the cause remanded, with directions to said court to reverse

the order of the county court, and to remand the case to that court, with an order to reject said paper as the will of Richard Soward, deceased.