## Limbach, et al. v. Bolin, et al.

(Decided March 16, 1916.)

## Appeal from Daviess Circuit Court.

1. Wills—Requisites and Validity—Attestation.—A will in order to·
   be valid under section 4828, Kentucky Statutes, if not wholly
   written by the testator, must be subscribed by him in the pres-
   ence of two attesting witnesses, or, if not subscribed by him in
   their presence, it must have his signature attached to it at the
   time he acknowledges the instrument before such witnesses as his
   will.

2. Wills—Requisites and Validity—Attestation.—Where the testator
   prepared a paper intending to execute it as his will and presented
   it to one for the purpose of having him attest it as a will, which
   the witness did in the presence of the testator, but the paper was
   not subscribed by the testator in the presence of the witness, nor
   was his subscription to it at the time he acknowledged it before
   the witness, such paper was not properly executed as a will and
   is not entitled to probate as such.

LOUIS I. IGLEHART and LEO H. FISHER for appellants.

LAVEGA CLEMENTS, CLEMENTS & CLEMENTS and R. W.·
ARMSTRONG for· appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Louis A. Miller died on July 4, 1913, being at the time a resident of and domiciled in Daviess county. On February 26, 1912, he attempted to execute his will. After his death and on August 18, 1913, the devisees therein (appellees here) presented the paper to the county court of Daviess county for probate and their motion for that purpose was sustained and the paper probated as the last will and testament of Louis A. Miller. From that judgment an appeal was prosecuted to the circuit court, and it, after hearing, approved the judgment of the county court in probating the paper as such will. From the judgment of the circuit court appellants, who are the collateral heirs and next of kin to L. A. Miller, prosecute this appeal.

The contentions of appellants which were presented for the first time in the circuit court are: That the paper was not executed in substantial compliance with our statute regulating the making of wills; and, that the testator was unduly influenced to execute it. On the trial in the circuit court, the second one was abandoned and there was an agreed stipulation of facts filed by the parties as to how the paper was executed, it constituting all the evidence heard by the circuit court. Upon this point the stipulation shows: That the testator went to the Daviess County Planing Mills carrying with him the paper claimed to be his will, it not being in the handwriting of Miller, and he there requested W. R. Jagoe to witness it as his will, whereupon Jagoe signed his name to the paper. Miller did not subscribe his name to it in the presence of this witness nor was his name subscribed to it at the time the witness attested it with his signature. The testator took the paper in this condition, without his name being subscribed to it, to another place in Owensboro, where H. N. Robertson was requested by him to witness or attest the paper as his will, which was done by Robertson, and in the presence of this witness the testator subscribed his name to the paper. After this subscription by the testator, no acknowledgment of it was ever made to the witness Jagoe and he at no time saw the paper with the name of the testator subscribed to it.

The question is, do these acts constitute a substantial compliance with our statute upon the subject, it

being section 4828, Ky. Statutes, and in language as follows:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

This supposed will is not holographic and if vitalized at all it must be by that portion of the section saying, "moreover, if not wholly written by the testator, the subscription shall be made *or the will acknowledged* by him in the presence of at least two credible witnesses," etc. As the testator did not subscribe the paper in the presence of two witnesses it becomes necessary to still further narrow the inquiry to the meaning of the clause, "or the will acknowledged by him in the presence of at least two credible witnesses."

When the will is not a holographic one, it may receive legal vitality under the statute in one of two ways. One by the testator subscribing it in the presence of the two witnesses, and they attesting it by subscribing their names in his presence; and the other by the testator acknowledging *the will* in the presence of the two witnesses, who shall attest it by their signatures in his presence. The first one was not followed in this case, and the inquiry is whether the second one was. It will be observed that the paper which the statute requires shall be acknowledged by the testator before the witnesses is "the will."

Great assistance in the solution of the question before us will be rendered by ascertaining the true meaning of the word "will" (the thing to be acknowledged) as used in the statute. Blackstone in his Commentaries, 2nd Vol., 499, defines it as "the *legal* declaration of a man's intentions which he wills to be performed after his death." This definition is adopted with approval by the author of Amer. & Eng. Ency. of Law, 2nd Ed., Vol. 30, page 550, and also by the court in the following cases: Smith v. Bell, 6 Peters, 68; Colton v. Colton, 127 U. S., 309; Hardenberg v. Ray, 151 U. S., 112; Jackson v. Culpeper, 3 Ga., 569; Robinson v. King, 6 Ga., 547; Langdon v. Cester, 16 N. Y., 49; Clayton v. Liverman, 21 N.

C., 558; Price v. Johnson, 90 N. C., 592; Frew v. Clarke, 80 Pa. St., 178; and by this court in the precise words of Blackstone in the case of Ward v. Ward, 104 Ky., 857. The definition given by Swinebourne is, "A last will is a *lawful* disposing of that which anyone would have done after death." Swin. Pt. 1, Secs. 3 and 4. These definitions meet with our approval as well as having been adopted by this court in the Ward case, *supra*.

It will be noticed that a paper in order to be brought to the full development of a will, must, according to Blackstone, "be a *legal* declaration," and by Swinebourne's definition, "a *lawful* disposing," etc., and any paper not possessing the requisites to make it a *legal* declaration or a *lawful* disposition, would fall short of the definition of a will. All statutes upon the subject of wills, both English and American, require them to be either signed or subscribed by the testator in order to render them valid and effectual for the purpose of disposing of property after death. Under all of them a paper which is not signed or not subscribed by the testator is wholly ineffectual for any purpose and would not be probated as a will by any court because it would not be a will.

Why, then, may we ask, could it be a will when not subscribed or signed by the maker for the purpose of attestation or acknowledgment before the witnesses and yet not be a will unless signed or subscribed by him for the purpose of probate? If the paper constituting the will is a *legal* declaration or a *lawful* disposition by the testator it must be an executed one, which, according to some of the statutes, must be a subscribed one, and according to others, a signed one. The acknowledgment required by the statute is the recognition by the testator before the attesting witnesses of his *subscribed* or *executed* will. Without this execution of the will by the testator's signature, the paper which the witnesses attest contains only the testator's consent or wish that what is written therein shall control the disposition of his property after his death, but without such consent or wish having the verity required by law, which would not be legal declaration of such consent. It is the legalized consent verified by subscribing his will which the testator *acknowledges* before the witnesses and which they attest by subscribing their names. In other words, the paper which the testator must acknowledge the attesting

witnesses, must, at the time of such acknowledgment, be a completed or finished will so far as the requirements which the statute imposes upon the testator is concerned. This is not done under our present statutes until he has subscribed it. The direct question involved here, although determined as herein held by courts from other jurisdictions (Lane v. Lane, 114 Am. St. Rep., 207, and notes on page 213; Simmons v. Leonard, 30 Am. St. Rep., 875; Chase v. Kittredge, 11 Allen, 49; Reed v. Watson, 27 Ind., 448; Lewis v. Lewis, 11 N. Y., 220; Jauncey v. Thorne, 45 Amer. Dec., 432; Tilden v. Tilden, 13 Gray, 110) has not been directly passed on by this court. It has, however, been inferentially upheld in the following cases: Shanks v. Christopher, 3 A. K. Mar., 144; Sarah Miles' Will, 4 Dana, 1; Swift v. Wiley, 1 B. Mon., 114; Chisholm's Heirs v. Ben Celia, &c., 7 B. Mon., 408; Griffith v. Griffith, 5 B. Mon., 511; Sechrest, &c., v. Edwards, &c., 4 Met., 163; Allen v. Everett, 12 B. Mon., 371; Soward v. Soward, 1 Duv., 126; Grubbs v. Marshall, 11 Ky. Law Rep., 870; Savage v. Bulger, 25 Ky. Law Rep., 763; McKee, &c., v. McKee's Executors, 155 Ky., 738.

The requirements of the statute in force at the time of the execution of the wills under consideration by this court in these cases were not in each instance the same. In some of them the law required the will to be *signed* by the testator, and as this requirement was the same as that required by the earlier English Statutes on the subject, the construction of the English courts as to what constituted a signing of the will, was followed by this court when similar statutes were under consideration. This construction was to the effect that the will need not be signed by the testator at the bottom thereof, but the requirement would be fulfilled if the name of the testator appeared anywhere in the body of the will. This was held to be a sufficient signing, and accordingly it was held in the Sarah Miles' will case, *supra,* that the attesting witnesses need not see the testator sign his name at the foot of the will, or see the name already signed at that place when the body of the will contained the name of the testator at the time the witnesses attested it. Inferentially holding that if there was no name of the testator signed at the end of the will and his name did not appear in the body of the will when the witness attested it, it would be invalid. The language used being:

"Mrs. Miles, the testatrix, fell a victim to the cholera, in July, 1833. Before she had been attacked with the fatal disease, she requested an intelligent neighbor to write her will, and instructed him how to write it. He wrote it accordingly, and commencing with, 'In the name of God, amen, I, Sarah Miles,' &c., ended with, "In ratification of which I have hereunto set my hand and affixed my seal," ' &c., adding a seal without the name. Thus prepared, it was read to her and approved by her, but was not then either subscribed by her, or attested; however, when afterwards published, being unable to subscribe her name, she acknowledged the paper as her will, in the presence of two witnesses, who attested it in her presence and at her request. From these facts we infer, that her acknowledgment was full, unconditional and final, without any intention to subscribe her name then or afterwards; but with the wish that the document thus acknowledged, should, as acknowledged, be established as her last will; and, therefore, according to a long and unbroken series of adjudged cases, although we may presume that, when the will was written, her name in the beginning was not intended to be her signature, nevertheless, as it was so designed and understood at the time of publication, we feel bound to decide, that it is a sufficient signing of the will within the constructive operation of the statute, and is as effectual as it would have been had it been subscribed by a stranger and acknowledged by her."

Appellees rely on the case of Allen v. Everett, *supra*. The law governing the execution of wills, when the testator's will involved in that case was executed, was the same as to the signing by the testator as the one governing the execution of wills in the Sarah Miles case, i. e., the testator should only sign the will, and this requirement under the adjudged cases was fulfilled when his name appeared anywhere in the will; consequently, this court in the Everett case said:

"The name of the testatrix is inserted in the body of this will, and her signature is also affixed to the bottom thereof; and if acknowledged by her to be her will to Chilton Duff before she signed it, but with the intention at the time of publication to give complete effect to it as her last will and testament without her signature, it is valid, notwithstanding she may have afterward,

at a different time, signed the will, and then acknowledged it before another subscribing witness."

It will be noticed that in the cases referred to the thing which the statute required the testator to do (sign the will) was done either before or at the time the witness attested it, although the testator may have subsequently in the absence of the witness performed the non-required or non-essential act of signing his name at the bottom of the will. So that these cases and others of their class do not conflict with, but rather uphold, the views which we have hereinbefore expressed. It will furthermore be seen that the facts in the Sechrest case, supra, show that at the time the witnesses were called upon to and did attest the will, all of the acts which the then law required the testator to do, including the attaching of his name to the will, had been done. In holding that the will therein involved was legally executed and entitled to probate, this court said:

"It may be assumed that the name of Sechrest had been written to the paper before Henderson ever saw it, and certainly before he attested it; his name is written out in full upon the paper as copied in this record, and the mark is placed between the Christian and surname. Henderson proves the mark was made after he subscribed it as a witness, but does not prove the name was written afterward; he only proves that his name and Carter's were written after he saw it. So that Sechrest's name must have been subscribed to the paper before he saw it; and, after his name had thus been subscribed to the paper, he acknowledged it to be his will, in the presence of the two witnesses, who subscribed it as such—which was a compliance with the requisition of the statute—and the placing the mark to it, whether by Sechrest or Carter, was wholly unnecessary."

This court in the case of Grubbs v. Marshall, supra, upon the question under consideration, said:

"However, it does not seem to us material whether he did actually make his mark in presence of the first witness or not, for it is shown his name was then subscribed by another in his presence and by his directions, which the statute makes equivalent to an actual subscription by the testator himself. And, although the second witness could not, nor did, testify he saw the name subscribed by such other person, he stated the testator made or retraced his mark. And as both of them testi-

fied the testator acknowledged the will, respectively, in their presence, we think the law was substantially complied with as to the manner of its execution, for it is not required, nor do we see why it should be treated as indispensable for subscribing witnesses to be present at the same time and place when the will is acknowledged, if it be, in fact, done in presence of each of them. Kaupin v. Woods, 1 Duv., 223."

And in the case of Savage v. Bulger, *supra*, quoted with approval from the Sechrest case as follows:

"It is not even material whether the names of the attestating witnesses or that of the testator, be first subscribed, if the witnesses were present when the testator either wrote his name or acknowledged it as his signature."

In the very recent case of McKee v. McKee, *supra*, this court said:

"Clearly it was the purpose of the statute to so provide for the execution and attestation as to eliminate all possible danger of fraud or deception; in other words, to so require the execution and attestation as that the testator might certainly know that the paper which he signed was the self-same paper which was attested and to enable the attesting witnesses to know that the paper they attested was the same paper signed by the testator."

And to the same effect is this court's opinion in the case of Garnett v. Foston, 122 Ky., 195, wherein this language is used:

"Its (the statute) requisitions being similar in import and substance, if not so in phraseology, there is not much difficulty in determining that the acknowledgment of a will by the testator in the presence of the witnesses, though written and his name subscribed by another at another time was a sufficient publication."

This language is taken from the case of Upchurch v. Upchurch, 16 B. Monroe, 102.

It must not be forgotten that the requirement of the statute that the will when not holographic shall be attested by the required number of witnesses, and in the manner specified, is no part of the legal execution of the will by the testator. It is only for probative purposes; the statute confining the means of proving the will after testator's death to this method only, as our statute on conveyances requires a deed to be proven

either by an acknowledgment before an officer authorized to take it, or before two subscribing witnesses. (Section 501, Ky. Statutes.) These formalities may appear upon the deed, still it will convey no title from the grantor, nor will it be admitted to record unless it bears the signature of the grantor. This is the holding of this court in the case of Helton v. Asher, 103 Ky., 730, where in it is said:

"The instrument in question was invalid. The certificate of the clerk could not impart any validity to it. It was essential to its validity that it should be signed by Helton. Had it been signed before him and acknowledged before the clerk, then it would have been a recordable instrument."

This section of the statute as to the acknowledgment of deeds is no more specific as to what shall be embraced in the acknowledgment by the maker than is the statute with reference to the execution of wills. The rule as to what constitutes the act of acknowledgment by the makers, in each, is analogous. If, then, the signature of the maker must be attached to the deed and it shall constitute a part of the deed to be acknowledged, we fail to see why the signature of the testator should not also constitute a part of the paper to be acknowledged as his will.

We conclude, then, that while the direct question involved here was not presented in any of the cases to which we have referred from this court, yet the language employed in the opinions at least inferentially holds that the paper which the witness must attest and which the testator must acknowledge, shall have been *executed* by the testator as prescribed by the statutes in existence at the time. We are aware of the rule in this State to the effect that a substantial compliance with the statute is all that is required (Flood v. Pragoff, 79 Ky. 607, and cases herein cited), but this rule cannot be extended so as to dispense with an essential requirement of the statute made for the purpose of preventing fraud either upon the testator or those upon whom the law casts his property after his death. The paper in contest herein not having been executed before two witnesses in accordance with the statute as herein interpreted, it should not be admitted to probate as the will of Louis A. Miller.

It results, therefore, that the judgment of the circuit court, manifesting a different view, should be and it is reversed, with directions to refuse the probate of the paper as the last will and testament of Louis A. Miller, and for proceedings consistent with this opinion.

Whole court sitting.