MONROE GENERAL TERM, March, 1851.     *Welles, Johnson, and Taylor*, Justices.

THE AMERICAN HOME MISSIONARY SOCIETY, *appellants, vs.* WADHAMS and PARMELEE, *respondents.*

A married woman may dispose of her *separate estate,* by an instrument in writing, purporting to be ·· er last will and testament.

In all cases of wills by *femes covert,* such an instrument is not, in fact, a will, but a writing in the nature of a will, in virtue of the power reserved to the *feme covert;* and whoever takes any thing under the same, takes by virtue of the execution of the power, and by the power coupled with the writing.

A *separate estate* of the wife, is one that she has such dominion over, as to exclude the marital rights of the husband.

It is a rule of the common law, that the power of alienation is an inseparable incident of the right of property. But it is also a rule that, during cover-

ture, a married woman can not dispose of either her personal or real estate without her husband's assent. Equity has encroached upon the common law in both these respects.

In this state, the *jus disponendi* is incident to the separate property of a married woman; and it follows, of course, by implication, that she may give it to whom she pleases; and her disposition of it will be sanctioned and enforced in a court of equity.

The word "*dispose*," in an ante-nuptial contract, is sufficiently comprehensive in its meaning, to include every possible mode of alienation, or disposition of property, and broad enough to cover a devise or bequest by will.

The general prohibition of disposition of personal property by married women, by will, contained in the revised statutes, does not comprehend cases where wills are made by married women in execution of a *power*.

In contemplation of marriage, and previous to its consummation, an ante-nuptial contract was executed in writing under seal, on the 28th May, 1838, between the intended husband and wife, wherein, after a recital of the facts, and that the intended wife was then possessed of a large separate estate real and personal, and that it was the intention of the parties thereto that she " should enjoy, control, and dispose of her said separate property, after said marriage, in the same manner, and with the like effect as though she had continued a *feme sole;*" the intended husband in consideration of the said marriage, and of divers other good considerations, &c. did covenant and agree to and with his said intended wife, that he would permit and allow her " to enjoy, control, receive, and dispose of her separate property both real and personal, in possession, or in action, or expectancy, together with the interest, rents, issues and profits, &c. to her own use, during and notwithstanding her said marriage, in the same manner and with the like effect as if she was a *feme sole.*" After the marriage the wife, on the 26th August, 1848, made an instrument in writing purporting to be her last will and testament, bequeathing $1000 to the appellants.

*Held,* 1. That the instrument was valid as the execution of a power of appointment, by way of devise, so as to convey the property.

2. That such an instrument, so made by a married woman, ought to be admitted to probate.

3. That the " act for the more effectual protection of the property of married women," passed April 7, 1848, (*Laws of* 71*st session, ch.* 200,) did not merge the equitable rights of the testatrix, under the ante-nuptial contract.

That statute does not affect contracts made previous to its passage, or interfere with pre-existing rights.

THIS was an appeal from a decree made by the surrogate of the county of Monroe, against the validity of the will of Elizabeth B. Wadhams, late of Parma, deceased, who died about the 29th of August, 1848. On the 28th day of August, 1848, she

American Home Missionary Society *v.* Wadhams.

made a last will and testament in due form, devising her estate to various persons, corporations, and voluntary associations. At that time the deceased was the wife of the defendant, Jonathan Wadhams, and living with him at Parma. This will was duly presented to the surrogate of the county of Monroe, for probate, and such proceedings were had in the premises, that on the 12th day of February, 1849, the surrogate, after hearing the proofs of the parties present, determined and adjudged the will and testament void, on the ground that the testatrix, at the time of making the will, was a married woman, living with her husband, and therefore incompetent to make a last will and testament. The defendant introduced in evidence before the surrogate, an ante-nuptial contract, between Jonathan Wadhams and the testatrix, bearing date the 28th day of May, 1838, by which Jonathan Wadhams covenanted to release all claim and right to the property that the testatrix at that time possessed ; and also covenanted, that the testatrix might make a trustee or trustees of the property, and dispose of it as she should prescribe in the deed of trust.

*J. D. Husbands,* and *S. A. Foot,* for the appellants.

*S. B. Jewett,* for the respondents.

*By the Court,* TAYLOR, J.   This case comes into this court, on an appeal from the decree of the surrogate of the county of Monroe, refusing probate of an instrument in writing, purporting to be the last will and testament of Elizabeth Wadhams, on the ground that the said instrument was null and void, as a last will and testament, she being at the time of its execution a married woman.

It appeared from the proceedings before the surrogate, that the deceased testatrix, at the time of the execution of the said instrument, to wit, on the 26th day of August, 1848, was a married woman, the wife of the said Jonathan Wadhams, and was then living with him ; that on and before the 28th day of May, 1838, the said testatrix, then Elizabeth B. Crocker, was the

owner, in her own right, of real and personal property, and choses in action ; that a marriage was then contemplated by and between the said Jonathan Wadhams, and herself ; and that before the said marriage was consummated, and in contemplation thereof, the said Jonathan Wadhams, and the said testatrix, made and executed an instrument in writing, duly signed and sealed by them, by which, after a recital of the facts, the said Wadhams, in consideration of the said marriage, &c. did covenant and agree, to and with the said testatrix, that he would permit her to enjoy, control, receive, and dispose of her separate property, both real and personal, in possession, action, or expectancy, together with the interest, rents, issues and profits accruing out of the same, to her own use, during and notwithstanding her said marriage, in the same manner, and with the like effect, as if she was a *feme sole.*

There were other covenants on the part of the said Wadhams, constituting him a trustee for her use, provided any of the property should ever come to his hands, by operation of law, or in any other way, and otherwise confirming his obligation to use such property only according to her directions.

An instrument in writing was produced before the surrogate, purporting to be the last will and testament of the said Elizabeth Wadhams, to the form and execution of which, I believe, no exception was taken.  By this will the sum of one thousand dollars was given to the American Home Missionary Society, the appellant in this case ; and the only questions raised and argued are, 1. Whether an instrument made under these circumstances, is valid, as the execution of a power of appointment, by way of devise, so as to convey the property devised ; and 2. Whether such an instrument so made, by a married woman, can be admitted to probate.

No particular form of words is necessary, in order to create a separate estate, in the wife, to the exclusion of the husband ; (*Bell's Law of Prop.* 477 ;) but any words which imply independency of her husband's marital rights, constitute such estate.(*a*)

(*a*) See 2 *Bright on Husband and Wife,* 210, where all the cases on this subject are collected, and elaborately discussed.

(*Prichard* v. *Ames*, *Turner & Russ.* 222. *Steedman* v. *Poole*, 6 *Hare*, 193. *Wagstaff* v. *Smith*, 9 *Vesey*, 520. *Margetts* v. *Barringer*, 7 *Simons' Rep.* 482 ; 10 *Eng. Ch. Rep.* 158.) The true distinction is forcibly pointed out by Sir *Wm. Grant*, in *Heatley* v. *Thomas*, (15 *Vesey*, 596, 602.) The question is, he says, whether the property was separate property, to all intents and purposes; because it seems clear, that to the extent to which it is separate property, the court will give effect to the contract of the owner. If she has a power over it by deed, and agrees to exercise that power, or if it is settled generally to her own use, after the determination of the coverture, she can alienate it as if she were a *feme sole*. (*Batten's Law of Contracts*, 8. *Strong* v. *Skinner*, 4 *Barb. S. C. R.* 546.)

A separate estate of the wife is one, that she has such dominion over, as to exclude the marital rights of the husband. (*Dixon* v. *Olmius*, 2 *Cox*, 414, 1 *Madd.* 376. *Stanton* v. *Hull*, 2 *Russ. & Mylne*, 175.)

In this case, the marital rights of the husband, over the property, were all voluntarily relinquished, by a solemn agreement ; and the wife was left in possession of her separate property, to exercise dominion over it, to all intents and purposes, as if she were a *feme sole*, and this dominion is unrestrained, either as to the objects upon which, or as to the mode or form in which it should be exercised.

It is a rule of the common law, that the power of alienation is an inseparable incident of the right of property. (*Bell's Law of Prop.* 503.) But it is also a rule, that during coverture, a married woman can not dispose of either her personal or real estate, without her husband's assent. Equity has encroached upon the common law, in both these respects. When courts of equity first established the doctrine of a *separate estate*, it violated the laws of property between husband and wife ; but it was thought beneficial, and it prevailed. It being once settled that a wife might enjoy a separate estate, as a *feme sole*, the laws of property attached to this new estate, and it was found, as a part of such law, that the power of alienation belonged to such wife ; and was destructive of the security intended for it.

Equity again interposed, and by another violation of the law of property, supported the validity of the prohibition against alienation, contained in the deed or will. (*Nedby* v. *Nedby*, 4 *Myl. & Craig*, 367.) Hence it follows, that in relation to a separate estate, held by a *feme covert*, without the prohibition of anticipation, she is, to all intents and purposes, a *feme sole*, and so she is treated in all the books : equity, in every. respect, treating property given to a married woman, for her separate use, without restraint of alienation, as the property of a *feme sole*. (*Peacock* v. Monk, 2 *Ves. sen.* 190. *Fettiplace* v. *Gorges*, 1 *Ves. jr.* 46. *Atherley on Marriage Settlements*, 332. *Bell's Law of Prop.* 513. *Strong* v. *Skinner et al.* 4 *Barb. S. C. R.* 546.) The power of disposition, by a *feme covert*, of property given to her separate use, extends to her reversionary interest, as well as to her interest in possession. (*Headon and wife* v. *Kosher, McLelland & Young*, 89. *Sturgis* v. *Corp*, 13 *Vesey*, 190.) And in the case of *Hulme* v. *Tenant*, (1 *Bro. C. C.* 16,) Lord Ch. *Thurlow* says, the rule laid down in *Peacock* v. *Monk*, that a *feme covert*, acting with respect to her separate property, is competent to act in all respects, (including disposition by will, of course,) as if she was a *feme sole*, is the proper rule, and necessary to support the decisions, on this subject. (*See also Grigby* v. Cox, 1 *Ves. sen.* 517. *Hearle* v. *Greenbank*, 1 *Id.* 303.)

Mr. Roper, in his work on *Husband & Wife*, (vol. 1, p. 182,) says : " A limitation of real estate to the wife in fee, to her sole and separate use, without expressing more, will not enable her to dispose of it, during the marriage, otherwise than by fine or recovery." But upon that point, *McQueen*, (*Husband & Wife*, 296,) a much later authority, says, " whatever may have been the law, at the time when Mr. Roper wrote, the inclination of the courts, at the present day, is to give effect to the wife's separate estate, exactly as if she were a *feme sole*. Now, if a married woman has the fee simple of real property, to her separate use, she may, without her husband's concurrence, convey the equitable or beneficial interest, by deed, executed by herself alone. (*Lewin on Trusts*, 1st ed. 151. *McQueen on Husband*

*and Wife*, 297,) and if land be conveyed to a trustee and his heirs, in trust for a feme covert and her heirs, for her separate use, she may dispose of the fee simple precisely as if she was a single woman. (*Ibid.*)

So in the case of *Rippon* v. *Dawding*, (*Amb.* 565,) the wife stipulated with her intended husband, that she should have the power of disposing of her estate, notwithstanding her coverture. She afterwards in her husband's lifetime, devised the estate to her younger children, in fee. After her death the devisees brought a bill against her heir at law, for a conveyance of the estate, and Lord Camden decreed accordingly.

In many of the American states the principle adjudged is directly hostile to that which is so well established in England.

The leading case in this departure from the English doctrine, was that of *Ewing* v. *Smith*, (3 *Des.* 417.) On appeal from the decree of the chancellor, the court of appeals of South Carolina established the rule, that a *feme covert*, has no power with regard to her separate estate, but what has been expressly given to her by the instrument of settlement, and that any power so given must be strictly pursued. And this rule has been since sustained by a multitude of cases in the courts of that state. (1 *Hill's Ch. R.* 228. 1 *Dudley's Cases in Chy.* 128. *Cheves' Cases in Chy.* 163. 1 *Strobhart's Eq. Cases*, 27, 114.) The same doctrine has also prevailed in the courts of Pennsylvania, Tennessee, Mississippi, &c.

In this state however, the English doctrine has been fully sanctioned. In the case of *Jacques* v. *The Methodist Ep. Ch.* (3 *John. Ch. Rep.* 78,) Chancellor Kent reviewed, with great acuteness and ability, the leading cases decided in the English courts, bearing upon this question. In giving his opinion, he says, that although, at the first glance at the authorities, they appear to be full of contradiction and confusion, still he admits that "they are certainly in favor of the position, that a married woman is considered, in equity, with respect to her separate property, as a *feme sole*, and is held to have an absolute dominion, or power of disposition over it, unless the power of disposition be restrained by the deed or will under which she became entitled

to it. But considering the English decisions " as floating and contradictory," he adopted the rule that " she ought to be deemed a *feme sole sub modo*, or only to the extent clearly given by the settlement."

But on appeal to the court of errors, this decision was reversed (17 *John. R.* 548,) and the English doctrine fully sustained, namely, that the *jus disponendi* is incident to her separate property ; and it follows of course, by implication, that she may give it to whom she pleases, and her disposition of it will be sanctioned and enforced in a court of equity.

So Cowen, J. in *Dyett* v. *The North American Coal Co.* 20 *Wend.* 571,) says : "Where her separate estate is completely distinct, and as here, independent of her husband, she seems to be regarded in equity, as respects her power to dispose of, or charge it with debts, to all intents and purposes as a *feme sole*."

If, however, there were any room for doubt on this point, I think the terms of the ante-nuptial contract were broad enough to cover the devise or bequest by will; the word "dispose" being sufficiently comprehensive, in its meaning, to include every possible mode of alienation, or disposition of property.

But it is contended, that at law, the will of a married woman is void; she being expressly prohibited from making a will, by our revised statutes, (2 *R. S.* 56, 57, *part* 2, *chap.* 6, *tit.* 1, *art.* 1, § 1.) This statute, so far as real estate is concerned, grants a power to all others, except those named, but is not, in terms, a prohibition to married women, although the exception, no doubt, operates as an exclusion, in all cases, if not controlled by other statutes.

It can not be denied that a power can be conferred on and held by a married woman. If there was ever any doubt on that point, it is effectually removed by the revised statutes (*part* 2, *chap.* 1, *tit.* 2, *art.* 3, 1 *R. S.* 735,) when treating of powers, for the 109th section expressly recognizes such capacity in her, and the 110th section provides that a married woman may execute a power during her marriage, by grant or devise, as may be authorized by the power, without the concurrence of her hus-

band. These clauses in the statute relating to powers, sustain the recognized common law of the state, as sanctioned by our court of ultimate resort, and were probably incorporated in the statute law, to leave no doubt upon so important a principle. And it should be kept in view in all cases of wills by *femes covert* that such is not in fact, a will, but a writing in nature of a will, in virtue of the power reserved to the *feme covert ;* and that whoever takes under the same, takes by virtue of the execution of the power, and by the power coupled with the writing.

The comments of the chancellor upon section 21, 2 R. S. p. 60, prohibiting the disposition of personal property by a married woman by will, when the power of appointment is reserved to her, are in point, and are a sensible and satisfactory exposition of the meaning of the law. (*Strong* v. *Wilkin,* 1 *Barb. Ch. R.* 13.) It should not be assumed that the legislature intended to prohibit, in one section, the exercise of a power which was clearly granted in another. But if the capacity of a married woman to execute a power by appointment, be excepted out of the general prohibition contained in the 21st section, then the different provisions of these statutes are made to harmonize, not only with each other, but with long established principles, as administered in courts of equity. (*Moehring* v. *Mitchell,* 1 *Barb. Ch. R.* 272.) And if this doctrine be correct, it follows that Mrs. Wadhams had the capacity to execute the power of appointment by will, as well as by grant.

The counsel contended on the argument, that although the wife could execute a power by an instrument in the nature of a will, under the ante-nuptial agreement, which would be enforced in equity ; yet this being an equitable right, it became merged in the legal right, as secured to her by the act for the more effectual protection of the property of married women, passed April 7, 1848. (*Session Laws,* 71st *Ses. ch.* 200.)

And this point the counsel labored more vehemently than I think it deserved.

The wife had become vested with certain well defined equitable rights, by the agreement with her husband touching her property. Whatever those rights were, I apprehend the legis-

lature possessed no constitutional power to divest her of them, even if the language and intent of the act had been more decisive upon that point than they were.

The first and third sections have no relation to this case. Although the 2d section is intended to confer a legal right, it is in terms almost a repetition of the language of this ante-nuptial contract; and the 4th section provides that all contracts made between parties, in contemplation of marriage, shall remain in full force after such marriage takes place.

Such a confirmation of a pre-existing power or right, seems to have been not at all necessary. But the contracts referred to, then existing, were made in full view of the rights of the parties under them, both equitable and legal : and the legislature, no doubt, intended by that section to preserve in force all existing rights, equitable as well as legal, unimpaired, in consequence of the enactment of that extraordinary law: a law which is well calculated, in its influences, to embitter the chief spring of social enjoyment ; degrade the sacred relation of man and wife ; and leaving in full vigor, only the secular and sordid companionship of baron and feme.

So far as the law of 1848 has any operation upon this case, it simply superadds certain legal to the pre-existing equitable rights of the wife.

As to the remaining question, it was admitted by the counsel for the respondent, on the argument, that if the instrument of devise is efficacious as the execution of a power, though not as a will, it still might be admitted to probate. This is undoubtedly correct. To establish in evidence, the will of a married woman, made in execution of a power, probate of it was admitted and necessary in England, in the ecclesiastical courts, in order to confirm judicially its testamentary nature; and it is there settled, that such an appointment can not be made available either at law or in equity, without probate. (1 *Atk.* 159. *Stone* v. *Forsyth, Doug.* 707. *Jenkins.* v. *Whitehouse,* 1 *Burrow,* 431. *Rich* v. *Cockell,* 9 *Ves.* 369.) And the appointment is now allowed to be proved, without the husband's consent; the probate being limited to the property comprised in the

power. (*Tappenden* v. *Walsh*, 4 *Phill.* 352. *Moss* v. *Brander*, *Id.* 254.) In all such cases, great liberality is exercised by the ecclesiastical courts, which will not look nicely into the question, whether the appointment is authorized by the power; as the grant of probate does not determine the right, but leaves it open for decision in the temporal courts. (*Moss* v. *Brander*, 1 *Phill.* 253.)

A similar doctrine is held in our courts, (*Strong* v. *Wilkin*, 1 *Barb. Ch. Rep.* 14, 15. *Moehring* v. *Mitchell, Id.* 272,) and such is unquestionably the fair meaning of our statute relating to powers. The 110th section, (1 *R. S.* 735,) authorizes a married woman to execute a power during coverture " *by devise*," and the 115th section (1 *R. S.* 736) directs the mode in which such power " by devise," shall be executed, namely, precisely in the manner required for the due execution of wills in all other cases. By the 46th section (2 *R. S. p.* 66, 126, 3*d ed. sect.* 1 *of chap.* 460, *of* 1837,) exclusive jurisdiction is given to the surrogate of the county, to take the proof of last wills and testaments.

It would be absurd to suppose that the legislature, after having specially provided for the execution of a power by devise, by a married woman, intended to leave the devise *functus officio*, null and void, for the want of power in the courts to carry it into effect.

I am therefore of opinion, that the decree of the surrogate, of the 12th February, 1849, declaring that the said Elizabeth B. Wadhams was not competent to make and execute a will during coverture, and that the instrument in writing, purporting to be her last will and testament, was utterly null and void, as a last will and testament of the said deceased, be reversed, and that the same be remanded to the said surrogate; and that he be commanded to take probate of the said will of Elizabeth B. Wadhams, notwithstanding her coverture.

　　　　　　　　　　　　　　　　Decree accordingly.