## Sherill v. Ouerbacker, et al.

(Decided December 20, 1918.)

### Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Powers—How Exercised.—Where a power is given generally without defining the mode by which it must be exercised, it may be exercised by deed, will, or simple note in writing.

2. Powers—Disposition by Deed or Will.—Where a devisee of an estate is given an unlimited power of disposition he may dispose of it by deed or will.

3. Powers—Construction and Execution.—The expression "to dispose of" is very broad, and signifies more than "to sell;" selling is but one mode of disposing of property.

4. Powers—Extent of Power Granted.—Where property was devised to the testator's daughter "to hold the same with full power to use, hold, employ and dispose of my entire estate, real, per-

sonal and mixed, as to her may seem right and proper," the daughter had the power to dispose of it by will.

HUMPHREY, MIDDLETON & HUMPHREY and BLAKEY, QUIN & LEWIS for appellant.

BURNETT, BATSON & CARY and PRATT DALE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This appeal presents the will of A. T. Gilmore, for construction.

It reads, in full, as follows:

"Mindful of the uncertainty of life, I, A. T. Gilmore, of the city of Louisville, in the State of Kentucky, being of sound mind and memory, but being about to take a trip to New Mexico and California, in order to dispose of my entire estate in case any accident or misfortune should occur to me, do hereby make and publish this instrument in writing as my last will and testament.

"1. I hereby devise, bequeath and convey unto my beloved and faithful wife, Eliza I. Gilmore, my entire estate, property and effects, whether the same be real, personal or mixed property. The said Eliza I. Gilmore to have and to hold the same with full power to use, hold, employ and dispose of my entire estate, real, personal and mixed, as to her may seem right and proper.

"2. I appoint my beloved wife, Eliza I. Gilmore, executrix of my estate, and hereby request and direct that she shall give no bond as such executrix, or render any account of her doings as such executrix, to any court or person; but that she may be allowed to settle my estate, pay off any indebtedness of mine, and hold, use and employ the balance thereof in such manner as to her may seem right and proper.

"3. I request that my son-in-law, Samuel T. Ouerbacker, now my partner in business, and my beloved daughter, Hellen G. Ouerbacker, his wife, to assist and advise my wife upon any and all questions and matters she may need advice in relation to.

"4. I desire that my wife, Eliza I. Gilmore, hold the one-third interest in the business of Ouerbacker, Gilmore & Company as long as she may think right and proper.

"5. After the death of my beloved wife I desire my beloved daughter, Hellen, G. Ouerbacker, to take her mother's place in the above will. And I will refer to the first and second sections of the above will for rule.

"6. I desire and request that her husband, Samuel T. Ouerbacker, to assist and advise my daughter Hellen upon any and all questions and matters she may need advice in relation to.

"7. After the death of my beloved daughter, Hellen G. Ouerbacker, I desire and request that my entire estate be closed up and a good home bought or reserved worth twenty thousand dollars for my beloved granddaughter, Stella C. Ouerbacker, and to be for her own use, and free from any control of any husband she may have; and balance of my entire estate to be placed in government bonds, or some safe securities, and I desire and request that such bonds or securities be held in trust for the sole benefit of my beloved granddaughter, Stella C. Ouerbacker, during her natural life, and free from the control of any husband she may have, and I desire and request that the interest on said bonds and securities be paid to my beloved granddaughter, Stella C. Ouerbacker, for her own and separate use, and free from the control of any husband she may have.

"8. I nominate and appoint Samuel T. Ouerbacker trustee for my beloved granddaughter, Stella C. Ouerbacker, his daughter, and I desire and request her wind up my entire estate and place proceeds as directed in section 7.

"9. I request that he shall give no bond or render any account to any court or person.

"10. After the death of my beloved granddaughter, Stella C. Ouerbacker, if she should leave a child, or more than one, I desire that my entire estate, or the remainder, be held in trust, and refer to section 7 for the rule. I request that the interest be divided equally between the children, if any.

"Louisville, Ky., May 28, 1883.

"A. T. GILMORE."

The testator died in 1891, his wife, Eliza I. Gilmore, having predeceased him. In 1898 Stella C. Ouerbacker, the testator's granddaughter, married Dr. J. G. Sherill, who was the plaintiff below, and is the appellant here. Of this marriage Samuel O. Sherrill was born in 1900; he died in that year. Mrs. Stella Ouerbacker Sherill died in 1906; and in 1915 her mother, Hellen G. Ouerbacker (the testator's daughter) died leaving a will de-

vising all of her estate to her only surviving child, the appellee Gilmore Ouerbacker.

This action was instituted by Dr. Sherill against the devisee and trustee under the will of Hellen G. Ouerbacker, claiming one-half of the testatator's estate as the heir of his infant son, Samuel O. Sherill. In construing this will, appellant contends:

(1). That the testator left a life estate to his wife, Eliza I. Gilmore, with power to use so much of the corpus of the estate as she required for her needs, and to that end she was given the power to dispose of any part of the property left by the testator, that was necessary.

(2). That the testator's daughter, Hellen G. Ouerbacker, was left a life estate in the property, same to take effect upon the death of her mother, and subject to the same terms and conditions.

(3). That at the death of the testator's daughter the testator intended his granddaughter, Stella Ouerbacker Sherill, to take a life estate.

(4) That the testator intended that a vested remainder in fee simple should be taken by Samuel O. Sherill, the son of Stella Ouerbacker Sherill.

(5) That by reason of the death of the infant, Samuel O. Sherill, his mother inherited one-half of his estate and his father, the appellant, the other half; and

(6). That no part of the testator's estate passed under the will of Hellen Ouerbacker, because under her father's will, Mrs. Ouerbacker had no power to dispose of the estate left by him.

On the other hand, it is contended by the appellees that the testator's intention, as expressed in his will, was to make the following devises:

(a) His entire estate in fee simple to his wife, with power to dispose of it by deed, or will;

(b) His entire estate (undisposed of) in fee simple to his daughter Hellen, after the death of his wife, with power in the daughter to dispose of it by deed, or will;

(c) A life estate in the property undisposed of, in trust to his granddaughter, Stella, after the death of both his wife and his daughter, Hellen Ouerbacker; and,

(d) A life estate in trust to his great-grandchildren who might be living at the death of Stella, his granddaughter.

Being of opinion that the will conferred upon Hellen G. Ouerbacker full power to dispose of the testator's

entire estate, as to her might seem right and proper, the chancellor held that the estate passed to the appellees under her will, and dismissed the petition. From that ruling the plaintiff appeals.

If the contention of appellees, that the will carried a fee simple estate to the testator's daughter, Mrs. Ouerbacker, be correct, it necessarily follows that the testator's estate passed under her will, and the discussion is ended. And, it is further apparent that if Mrs. Ouerbacker took a life estate only, but with full power of appointment, and her will is a valid exercise of that power, the argument is likewise ended and an affirmance must follow.

In Dorsey v. Bryan, 170 Ky. 275, where the question was whether the wife took a fee or only a life estate, the court said:

"But in disposing of the question here presented we do not find it necessary to determine whether or not his wife took the fee-simple title, in the broad meaning of these words, as a devisee may have the power to convey the fee simple title in estate devised, and yet not be possessed, in the full meaning of those words, of such title. For example, if the devise has not been the fee simple in the estate, she may yet have such power of disposition as will enable her to convey the fee; and the only question with which we need concern ourselves is: Did Mrs. Bryan have this power?"

And, since appellant's argument concedes that Mrs. Ouerbacker took a life estate, subject to the same terms and conditions that the testator's wife would have taken had she survived him, the case may be reduced to a determination of this single question; what was the effect of Mrs. Ouerbacker's will? So, if it should be determined that Mrs. Ouerbacker's will was a valid exercise of the power conceded to her by the appellant, the case is disposed of without the necessity of determining whether Mrs. Ouerbacker took a fee simple as contended by the appellees, and without disposing of the many other questions argued by the appellant in support of his claim.

The devise to the widow under the first and second clauses was of the testator's "entire estate, . . . with full power to use, hold, employ and dispose of my entire estate, real, personal and mixed as to her may seem right and proper;" and by the second clause of the will the widow was appointed executrix with similar powers.

In Phelps v. Harris, 101 U. S. 370, it was said:

"The expression 'to dispose of' is very broad, and signifies more than 'to sell.' Selling is but one mode of disposing of property. . . .

"Now, whilst it may be true that when the words 'dispose of' are used in connection with the word 'sell,' in the phrase 'to sell and dispose of,' they may often be construed to mean a disposal by sale, it does not necessarily follow that where power is given generally, and without qualification by associated words, to dispose of property, leaving the mode of disposition to the discretion of the agent, that the power should not extend to a disposal by barter or exchange, as well as to a disposal by sale. The word is *nomen generalissimum*, and standing by itself, without qualification, has no technical meaning."

It is conceded, by all the parties, that the fifth clause, providing that Mrs. Ouerbacker should take her mother's place in the will after the death of the testator's wife, conferred upon Mrs. Ouerbacker, the same estate and the same powers that had been given to her mother in the preceding clauses of the will.

In 31 Cyc. 1117, the rule is stated as follows:

"Where a power is given generally, without defining the mode by which it must be exercised it may be exercised by deed, will or simple note in writing; and a power to appoint personalty amongst a class may, it seems, if no formality be required, be executed by merely naming the parties to be benefited."

It will be observed that this power of disposition is general, and is not limited by any particular method, or to any specified person. The liberal rule above announced has been followed, generally, by the decisions of this court.

In the late case of Knost v. Knost, 178 Ky. 267, the testator devised all of his estate to his wife "with full power to sell and convey" the same; and, in the later clause of his will he devised his estate to his children, after his wife's death. The testator's wife survived him and disposed of his property in her will, and the question was whether the property passed under the testator's will, or under his widow's will. The court held that the wife took a life estate only, because her power of disposition was confined to a power to *"sell and convey"* the estate of her husband, and that she had not exer-

cised that power. But, in so holding, the court was careful to point out this distinction, and to show that the restricted power was the ground of the decision, saying:

"If the power of disposition given to the widow were absolute, we would be forced to sustain appellant's contention that the will invested her with the fee; but the power given is expressly limited to the right or privilege to sell and convey. The widow was, therefore, without power to dispose of the estate by will. If, in conferring the power of disposition, the will had declared that the widow might sell and convey or otherwise dispose of the estate devised her, such language would, we think, as clearly have authorized her to dispose of it by will, as if it had expressly so declared."

Again, in Kleber v. Kleber, 24 Ky. L. R. 7, 67 S. W. 838, the testator, by the second clause of his will, devised all of his estate to his wife, "to do with as she pleased," and by the third clause he further provided that after her death or re-marriage, "should there be any estate remaining undisposed of I desire and bequeath that the residue be equally divided between my children, share and share alike." The widow, failing to sell the property, disposed of it by her will, and the question was whether she had that power; and, in holding that she did, this court said:

"We are of the opinion that the terms of Jacob Kleber's will, Item 2, quoted herein, gave his widow not only the title during her life or widowhood, but the 'right to dispose of the property as she pleased,' which included the right to dispose of it by will, It was only in the event she failed to dispose of it, or married before disposing of it, that that third clause was to become effective. She did not marry again. Therefore, as she 'disposed' of the property by her will, the children of August Kleber took nothing under the third clause of the grandfather's will. They must look to the will of the grandmother for title."

Likewise, in Becker v. Roth, 132 Ky. 429, the testator, in the first item of his will devised all his property, both real and personal, to his wife, "to hold and dispose of the same as her own separate estate," and by the second item he gave one-half of "the said property above devised and disposed of" to his own heirs and one-half to his wife's heirs "in case my said wife should die or marry again before said property above devised is disposed of."

In construing this will, the court said:

"It is obvious that by item 1 the fee simple estate in the property owned by the testator at his death was given to his wife with unlimited power to hold and dispose of it as her separate estate. This, we think, invested the wife with an estate which could not be divested by any subsequent provisions of the will."

Again, in Nelson v. Nelson's Exor., 140 Ky. 410, the will provided:

"I will and bequeath to my husband, E. L. Nelson, all my property, both real and personal, to have, hold, sell and transfer as he in his judgment may deem necessary and proper, but at his death any and all of said property and the proceeds resulting from the sale of same that he may own at the time of his death shall descend and go to my children equally."

It will be observed that this power of sale and disposition is hardly so broad and comprehensive as the power given in Capt. Gilmore's will. Nevertheless, in construing the Nelson will, this court said:

"In construing the foregoing will, the circuit judge held that the husband took the devised property absolutely, and that at his death it passed to the executor under his will and not to the children of Angelina Nelson. The rule is now well settled in Kentucky that, where property is devised absolutely, with the power of unlimited disposition, and by a subsequent part of the will the testator undertakes to devise over an undisputed remainder of the property, the limitation is void. In the case of Becker, et al. v. Roth, et al., 132 Ky. 429, we fully considered this question, collecting and reviewing the authorities bearing upon it, and there announced the rule as stated above. But where a life estate only is devised, with power of disposition, then the limitation over of such part of the devised property as should remain undisposed of at the death of the life tenant, is valid."

In Clos' Admr. v. Clos, 118 S. W. 980, the will read as follows:

"Be it known that I, Jacob Clos, hereby declare that all my personal and real property which I possess, in case I should die, shall be transferred to my wife, Louise Clos (nee Krummel) so that she, without giving bond and without the intervention of any court, may do with the bequeathed property, realty, moneys or valuables as she may choose or deem fit.

"Should she die before she has arranged matters, then the above mentioned is transferred to the children."

In construing this will, the court said:

"The question presented for decision is whether the widow of the testator took a fee simple in the estate devised, or whether it was a life estate, with the power of appointment, failing which the children and descendants of the testator took in remainder. We think the widow took a fee simple title. The unconditional power of disposition annexed to the devise to her creates the highest estate known to the law. Just what the testator had in mind by the expression 'should she die before she has arranged matters' can not be known. What matters he had reference to, or what arrangements he contemplated, can not be gathered with any certainty from the writing. A number of conjectures arises, but which of them would be correct we have no way of determining. If he contemplated that his widow should die without having consumed or disposed of the property, then the attempt to dispose of it by the will is not allowed; for a limitation can not be imposed upon a fee simple title."

In Dorsey v. Bryan, 170 Ky. 275, the devise was to the wife of "all my estate, both real and personal, of every description, to have and to hold and to enjoy as she may wish," the will indicating a desire that, if anything was left after the wife's death, it should go to a daughter. Without deciding what was the character of the estate thus devised to the wife, the court held she had the power of conveying a fee simple title thereto, and that her deed passed a good title.

In none of these cases can it be said that the language giving the power of disposition was stronger than that used by Capt. Gilmore; yet this court regarded them as supporting an unlimited and unconditional power of disposition.

In Forsythe v. Forsythe, 108 Pa. 129, the testator devised his land to his wife "during her natural life, with power to dispose of same as she may think best," and she devised it to one of her ten children. In an action brought by the other nine children, it was held that the property passed under the wife's will, the court saying:

"If the testator had said that his widow should have power to dispose of the property 'by will,' it could hardly be contended that he did not mean that a disposition to

become effective after her death was intended. But a general power to dispose of property 'as she may think best' is unlimited as to mode and therefore includes any kind of disposition. Moreover, the word 'dispose' is especially apt to convey the idea of a gift by will." Likewise, in American Home, &c. v. Wadhams, 10 Barb. 597, a woman made an ante-nuptial contract giving her the right to "dispose" of her property. The court was of opinion that her disposition of her property by will was valid both under the law governing separate estates of married women, and the power given in the contract. Upon this last point the court said:

"If, however, there were any room for doubt on this point, I think the terms of the ante-nuptial contract were broad enough to cover the devise or bequest by will; the word 'dispose' being sufficiently comprehensive, in its meaning, to include every possible mode of alienation, or disposition of property."

To the same effect see Kimball v. Sullivan, 161 Mass. 490; Burbank v. Sweeney, 113 Mass. 345; Wead v. Gray, 78 Mo. 59; Burleigh v. Clough, 52 N. H. 267, 13 Am. Rep. 23; Roman Catholic Clergyman's Corp. v. Hammond. 1 Harr. & J. 580; In re Gardner, 140 N. Y. 122.

From a reading of Capt. Gilmore's entire will, one can not avoid the conclusion that his dominant purpose in giving this power of disposition, first to his wife and then to his daughter, was to authorize either of them to dispose of his entire estate, and that he disposed of it only in the event they did not. Any other conclusion would do violence to the plain words and evident purpose of the testator.

Appellant contends, however, that while Mrs. Ouerbacker had the power of disposition, that power was only such an absolute power of disposal as a tenant for life may make; and, that it does not include the power of disposing of the fee by will. In support of this theory counsel rely upon Smith v. Bell, 6 Pet. 74, where the court used this language:

"We think the limitation to the son on the death of the wife restrains and limits the preceding words so as to confine the power of absolute disposition, which they purport to confer of the slaves, to such a disposition of them as may be made by a person having only a life estate in them."

It is true that Smith v. Bell, *supra,* has been cited by this court in Anderson v. Hall, 80 Ky. 98; McClelland v. McClelland, 132 Ky. 290; Buschmeyer v. Klein, 139 Ky. 131, and in Limbach v. Bolin, 169 Ky. 206, but not upon the point now under consideration. In each of the cases above named, this court cited Smith v. Bell in support of the rule for the construction of wills that the intention of the testator, as expressed in his will, must prevail.

In Brant v. Va. Coal & Iron Co., 93 U. S. 326, the court cited Smith v. Bell in support of the proposition that "where a power of disposal accompanies a bequest or de-vise of a life-estate, the power is limited to such disposi-tion as a tenant for life can make, unless there are other words clearly indicating that a larger power was intend-ed." And, in Smith v. Bell, the court stated the abstract rule to be that even the words "disposal absolutely" there used "*may* have their absolute character qualified by restraining words connected with and explaining them to mean such absolute disposal as a tenant for life may make." If the court meant to say, in Smith v. Bell, that a life tenant, having an unlimited and unrestricted power of disposition could not dispose of the fee, we are per-suaded that it is not sustained by the weight of the auth-orities.

But, however that may be, in view of the explicit de-cisions of this court holding that a devise pursuant to an unlimited power of disposition is valid, we must adhere to that rule and hold that Mrs. Ouerbacker's disposition by will was a sufficient exercise of the power.

In Kleber v. Kleber, *supra,* the court said it was im-material "whether the widow conveyed the property un-der her will as her own, or by virtue of the power con-ferred by the will of her husband," as the result was the same.

We do not understand that the other cases relied upon by appellant contravenes the rule announced. They are all to be distinguished upon the facts of those cases. Thus in Coates' Admr. v. L. & N. R. R. Co., 92 Ky. 263, the testator directed the residue of his property to be subject to his wife's "absolute disposal to sell, convey, transfer and expend as she may deem proper during her life, without restraint." Not only was this a qualified power of disposal "to sell, convey, transfer and expend," but it was further limited to its exercise "during her

life." The court merely held that a disposition by will was not a valid exercise of this power.

Likewise, in Minges v. Matthewson, 72 N. Y. S. 162, the widow was given the right to dispose of the property "during her natural life;" and in State v. Gaugham, 187 S. W. 918; the donee had the power to "sell and in any other way or manner dispose of as she may choose, during her natural life, any and all of said property."

Beard v. Knox, 5 Cali. 256, was decided under a law peculiar to California and is not inconsistent with the rule above laid down; while the Pennsylvania case of Fisher v. Herbell, 7 W. & S. 63, is practically overruled by the later case of Forsythe v. Forsythe, 108 Pa. 129, above cited. Levy v. Leeds, 151 Ky. 56, did not discuss the right of the devisee to dispose of the property by will. The question being whether Mrs. Levy had the right to sell and convey, the court held that she did. It would be entirely consistent with that decision for the court to hold that Mrs. Levy also possessed the power to dispose of the property by her will, should that question arise.

Having reached the conclusion that the chancellor was right in holding that Mrs. Ouerbacker had the power to dispose of the residuum of her father's estate, and that the will was a valid execution of the power of appointment, it becomes unnecessary to discuss the other questions presented and argued by counsel, as to the nature of Samuel O. Sherill's estate and the operation of the rule against perpetuities.

Judgment affirmed; the whole court sitting.